[Civ. No. 2188. Third Appellate District.—October 5, 1921.]

D. E. KELLIHER, Respondent, v. NORA FITZGERALD, a Widow, et al., Appellants.

[1] Waters and Water Rights—Interference With Flood Waters—Action for Damages—Pleading—Judgment.—In an action for injunctive relief and for damages because of the interference by defendants with the natural flow of flood waters, an allegation that as the result of the washing, cutting, and silting of plaintiff's land the "same have become, are and will be more expensive to plow, harrow, sow, crop and harvest, and thereby their economical use has been diminished and damaged to plaintiff's damage" in a specified sum, is not so obnoxious to the rule requiring certainty and freedom from ambiguity as to justify a reversal on appeal of a judgment in favor of plaintiff.

[2] ID. — EVIDENCE — CREATION OF NUISANCE — ABATEMENT AT DE-
FENDANTS' EXPENSE.—In such an action, the court having found
upon sufficient evidence that the nuisance had been created by the
act of the defendants, the plaintiff is entitled to have the nuisance
abated, and no special item of evidence is needed to support a
provision in the judgment that the excavation made by the defend-
ants be "by said defendants, at their own cost and expense, forth-
with filled in, repaired and corrected."

[3] ID.—MAINTENANCE OF WATERWAY—ERRONEOUS JUDGMENT.—In such
an action, while the judgment may properly restrain the defendants
from deepening or widening the waterway, it should not command
them to "maintain" the waterway so as not to have dimensions
exceeding a certain specified width and depth. Floods, the acts
of third parties or other causes, might, without the fault of the
defendants, operate to widen or deepen it.

APPEAL from a judgment of the Superior Court of
Stanislaus County. E. N. Rector, Judge. Modified and
affirmed.

The facts are stated in the opinion of the court.

Newton Rutherford and Hatton & Scott for Appellants.

A. H. Ashley for Respondent.

THE COURT.—The court granted a rehearing of this case
mainly for the purpose of further considering the claim of
the appellants that the findings are hopelessly conflicting. It
is earnestly insisted that finding V conflicts with finding VI
and other findings. We have given the matter mature con-
sideration and we are satisfied as the result of such examina-
tion that there is no conflict whatever between them. It is
clear to us that finding V relates to one matter and finding
VI to another.

To understand this point fully it must be recalled that the
respondent urges two causes of action in his complaint.
They are not stated in separate counts, but they are quite
distinct. They are:

First: That the flood waters are so diverted by the em-
bankments of which he complains that they are thrown in
volume into a drainway upon and across the premises of the
respondent, and that they have washed and deepened this
drainway to such an extent that he cannot plow and harrow

across it as he was accustomed to do. The following quotation from paragraph 25 of the respondent's complaint will make this plain:

"That upon plaintiff's said lands adjoining said Fitzgeralds there is no marked depression or swale and, with the exception of said above drainway, the same were, prior to said flooding thereof, practically level for approximately a mile or more west of said boundary or division line; that said unusual surface waters so in the spring of 1918 forced thereon and thereover by said acts of said Fitzgeralds flowed over said portion of said section one until they reached said drainway in the westerly portion of said triangle; that such waters then followed substantially the said course of said drainway and so frequently and irregularly cut, washed, deepened, widened or changed the same and so carried the soil therefrom throughout most of its entire length that it is and was thereafter and will hereafter be impossible or imprudent to plow or drill the said lands through which said drainway meandered except by plowing on either side of said enlarged and deepened drainway, etc."

The issue tendered by this allegation is met and covered by finding V. It will be noted that the court found against the respondent as to this cause of action, and in so doing it employed the language found in that finding.

The second and principal cause of action stated by respondent relates to the injury inflicted by flood waters in spreading out upon and over his farming lands and destroying the crops growing thereon.

The court determined this issue in favor of the respondent and awarded damages and preventive relief. It awarded, also, certain mandatory relief, which will be noticed further along.

We find no ground for reversing the judgment. On the contrary, we adhere to the views expressed in the opinion filed herein on the former hearing as prepared by Judge Prewett, presiding justice *pro tem.*, and we hereby adopt the same as the opinion of the court. Correcting a trifling typographical misprision, said opinion is in the following words:

"Action for abatement of nuisance, injunction and damages. It is averred that the alleged nuisance consists of embankments and excavations constructed in the years 1916

and 1917 and since maintained by the defendants, thereby causing the surface waters to flow in increased volume from lands of the defendants to the adjoining lands of the plaintiff to his damage in the sum of $11,500. The answer traverses all the allegations of the complaint. The plaintiff had judgment abating the nuisance, prohibiting its future maintenance and relief by way of damages in the sum of $200. The evidence in the case is unusually voluminous and is emphatically contradictory on every contested point. The evidence together with the briefs and other papers, fills about 1700 pages. In addition, about thirty photographs and several maps accompany the transcript.

"The defendants appeal from the judgment and assign various alleged errors, some of which invite only a passing notice. The pleadings are unusually lengthy. In fact, they leave nothing to be desired in the way of prolixity of detail. The complaint, reduced to its lowest terms, is simply an allegation that the defendants, by the construction and maintenance of two embankments and the excavation of a ravine beyond its normal dimensions, have thereby caused the surface waters to flow across and injure the lands of the plaintiff, instead of flowing, as they would under normal conditions, across the lands belonging to themselves. The various assigned errors may be summarized as follows:

"1. Overruling the demurrer to the complaint;

"2. Contradictory findings;

"3. No evidence of damages to the amount of $200;

"4. Error in admitting proof of damages;

"5. Failure to find on material issues;

"6. Finding No. IV not supported by evidence;

"7. A portion of the judgment unsupported by evidence.

[1] "The only point urged on demurrer is that the complaint is ambiguous and uncertain as to a certain allegation which reads as follows: 'That as a result of said washing, cutting and silting of plaintiff's said lands, same have become, are and will be more expensive to plow, harrow, sow, crop and harvest, and thereby their economical use has been diminished and damaged to plaintiff's damage in the sum of $1,000.' We think this allegation is not so obnoxious to the rule requiring certainty and freedom from ambiguity as to justify a reversal.

"The point as to contradictory findings will be passed until we shall have noticed the other ground urged by defendants.

"It is insisted that there is no evidence of the injury on account of which the court allowed $200 by way of damages and no evidence as to the amount of injury wrought. But the testimony of the plaintiff given under objection by the defendants is quite full upon this point.

"He stated the sources, character and extent of the injuries and gave an estimate of his damages at one thousand dollars. The point is not well taken. The fourth ground is practically a repetition of the third and is answered by what is said with reference to that point.

"In the fifth ground, it is claimed that the court failed to find on material issues. The complaint alleged the existence of certain depressions on the ground designated as Swales, Nos. 1, 2 and 3. This was denied in the answer. Assuming for the moment that this is a material issue upon which the court was required to find, it will be seen that the court did find as follows: 'That the evidence is insufficient to support the allegations of plaintiff's complaint as to the existence of Swale No. 1, Swale No. 2 and Swale No. 3.' This is sufficient, especially as to a probative fact like this.

"In the sixth point, the court is asked to reverse the judgment on the ground that finding number four is not supported by the evidence. This finding purports to give the maximum dimensions of the waterway in question and it is claimed that there is no evidence upon this point. But in this position, counsel are in error. A vast amount of testimony throughout the trial dealt, in one way and another, with this waterway and its depth, width, meanderings and general course. It would be unprofitable and needless to undertake to quote it in detail. In the same connection it is claimed that the court failed to find that the lands of the appellants are higher in elevation than those of the respondent. But the court did find that the surface waters, under normal conditions, flow from the lands of the appellants upon and across the lands of the respondent, and it must be conceded that, even in the locality in question water, under normal conditions, flows down hill. Besides, the respective elevations are probative facts. The ultimate fact is the flow of the water. As to all these points the evidence is by no

means all one way and this court is bound by the finding of the trial court. We find no fault with his conclusions. On the contrary, they appear to be fully supported by the record.

[2] "It is urged that a portion of the judgment is not supported by the evidence. The portion thus excepted to provides that the excavation made by the defendants, be 'by said defendants, at their own cost and expense, forthwith filled in, repaired and corrected, etc.' No especial item of evidence is needed to support such a provision. When the court found upon sufficient evidence, that the nuisance had been created by the act of the defendants, it followed as a conclusion therefrom that the plaintiff was entitled to have the nuisance abated. The provision objected to is proper.

"There remains for consideration only the second point. This requires a little more extended notice. It is claimed that finding numbered five is contradictory of other findings and especially of finding numbered six. Finding five is in the following words:

" 'V. That the quantity of water so thrown upon and flowing over said lands of plaintiff (which quantity, but for said excavations, embankments, etc., would have flowed upon and over said 249.67 acres of defendants), did not frequently, irregularly or at all appreciably up to the present time cut, wash, deepen, widen or change the said course or the drainway across any of said lands of plaintiff and carry soil therefrom throughout much of its entire length of said two miles; that said channel, unless corrected, will result in the more rapid passage of said waters and in the increase of the water flowing upon and across plaintiff's lands.'

" 'VI. That said excavation, said construction of said embankments, etc., was done by defendants without right and without plaintiff's consent and against his will; that as a result of said washing and said cutting of plaintiff's lands in March, 1918, the same became, are and will be more expensive to plow, harrow, sow, crop and harvest; that thereby their economical use has been and is diminished and damaged in the sum of $200. That the said work by the said defendants on said 249.67 acres has resulted and will result in throwing more water on plaintiff's lands than otherwise has or would naturally have flowed to or come upon the same; that said water so thrown upon plaintiff's

lands has done damage to plaintiff's lands and has damaged the economical value or use thereof.'

"It will be seen that Finding V relates to one matter and Finding VI to quite another. The former finds that the waters unlawfully thrown upon the lands of the plaintiff 'did not . . . cut, wash, deepen, widen or change said *course* or the *drainway* across any of said plaintiff's lands etc.'. The apparent meaning of this is that, the waters did not enlarge the drainway, thereby committing little or no injury. The chief injury would have resulted and did result from spreading the waters out over the farming land and washing, cutting and otherwise injuring the same. Finding V, while infelicitous ·is not contradictory of the other findings.

[3] "It is urged that a portion of the judgment is erroneous in that it directs the defendants to 'maintain' the waterway so as not to have dimensions exceeding a certain specified width and depth. This provision should be stricken out. Elsewhere in the judgment it is provided that the defendants be 'forever enjoined and restrained from deepening or widening said waterway.' While they are properly restrained from deepening or widening the waterway, they should not be commanded to maintain it as against the operation of natural conditions for which they are not responsible. Floods, the acts of third parties or other causes might, without the fault of the defendants, operate to widen or deepen it."

The last point discussed in the foregoing opinion demands a little further attention at our hands. In its judgment, the trial court decreed that the appellants "maintain" the excavation at its reduced dimensions. This mandate appears to extend through all future time and it imposes a hardship upon appellants which they should not be compelled to bear. They are, of course, responsible for their own injurious acts and the court has properly restrained them from a repetition or continuance of them; but upon no principle of equity should they be compelled to anticipate or correct the effect of agencies or causes over which they have no control. They are restrained from widening or deepening the excavation and thus far the judgment is proper. But natural causes, such as floods, long-continued storms, cloudbursts, and other

natural agencies may widen or deepen the excavation; or it may be done by third persons without the consent or co-operation of the appellants. The respondent asks us to refrain from excising these mandatory parts from the judgment. We cannot accede to this view. It is presumed that the respondent was awarded the proper sum as damages for all injuries actually inflicted or which must inevitably ensue. For. any other injuries that may be inflicted in the future, he must depend upon his preventive relief or upon such other action as may be available to him.

The judgment is modified by striking therefrom the following words: "and that the same be by defendants, at their own cost and expense, so maintained as not to have dimensions exceeding those above mentioned and provided for," and also the following words, "and maintain" as last used in said judgment.

As thus modified, the judgment is affirmed, the respondent to recover his costs of this appeal.

A petition for a rehearing of the cause was denied by the district court of appeal on November 4, 1921, and the following opinion then rendered thereon:

THE COURT.—In response to appellants' petition for rehearing we may state that there is an inaccuracy in the following italicized portion of our opinion: "The second and principal cause of action stated by respondent relates to the injury inflicted by flood waters in spreading out upon and over his farming lands and *destroying the crops growing thereon.*" The damage was not to *growing crops* but it was caused by the additional expense that would be incurred in cultivating the land and harvesting a future crop. There was some evidence to support the finding in that respect.

As to the supposed conflict between findings V and VI we must remember that, if possible, findings are to be reconciled so as to support the judgment. While the expression in finding VI, "said washing and said cutting," standing alone, might be construed as referring to the "drainway" mentioned in finding V, yet when the entire finding, No. VI, is read in connection with finding No. VII, it is not difficult

to determine that it was intended to embrace the damage caused by the overflow of the flood waters.

The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 1, 1921.

All the Justices concurred.

Lawlor, J., was absent, and Richards, J., *pro tem.*, was acting.